Judge LEON A. CANNIZZARO, JR.
|! This case involves an appeal from a judgment deciding a dispute between a contractor, Pellittieri’s Bayous Homes, Inc. (“Bayou Homes”), and Christopher P. Montz and his wife, Kimberly, in connection with the construction of the Montzes’ residence in Mereaúx, Louisiana. The Montzes are appealing the trial court judgment and the amended trial court judgment pursuant to which Bayou Homes was awarded $15,978.33 plus costs and legal interest. Bayou Homes answered the appeal and is asserting that it was entitled to additional funds that were due under the construction contract between the Montzes and Bayou Homes.
FACTS AND PROCEDURAL HISTORY
The Montzes entered into a building contract with Bayou Homes for the construction of their home for a price “not to exceed bid price of $184895 [sic].” Attached to the contract was a list of allowances for various aspects of the construction. The contract provided that “[a]ny cost overruns in excess of allowances will be the sole responsibility of the client,” and the list stated with respect to certain items that any extras would be paid by or charged to the owner.
|2The contract also contained a provision regarding dispute resolution that read as follows:
Any dispute between owner and contractor with respect to any matter or *767 anything relating to this contract shall be referred to [sic] for final determination to Reed Consulting Engineers within 7 days of completion of contract or acceptance of house. His findings shall be the sole method for dispute resolution. If he is unwilling or unable to serve, another mutual expert will be named acceptable by [sic] both parties.
The original plans for the construction of the Montzes’ home were stamped by Thomas Reed, an engineer with Reed Consulting Engineers, with the date June 29, 2001, and they were approved by St. Bernard Parish in July of 2001. The plans were modified, however, and the revised plans were stamped by Mr. Reed on August 27, 2001, and a building permit was subsequently issued.
The contract included a payment schedule under which payments would be made to Bayou Homes as the various stages of construction were completed. The Montzes made payments during the construction period in the total amount of $166,405.51, which equaled all of the scheduled payments required to be made less the ten percent to be retained until the final inspection of the construction had been completed. Before the construction was finished, however, a dispute arose between the Montzes and Bayou Homes. Because of the dispute, Bayou Homes did not complete the construction, and the Montzes hired another contractor to finish it.
Additionally, it was agreed between the Montzes and Bayou Homes that to enable them to save on the cost of constructing their home, the Montzes would be responsible for certain items that they could do themselves such as painting the | ¡¡walls, installing the flooring, installing the soffits, and cleaning up the construction site. The Montzes were to be given credit against the contract price for the labor that they performed and the materials that they purchased to the extent that these items were included in the contract price.
Because Bayou Homes claimed that it had not been paid all that it was owed under the ' construction contract, it filed suit to enforce a lien for labor and materials in the amount of $21,409.31 plus interest, costs, and attorney’s fees. The $21,409.31 represented amounts allegedly owed by the Montzes for extra materials that were used and extra labor that was performed as a result of changes to the construction of the house that were made at the Montzes’ request after the contract was executed. These changes included a breezeway connecting the garage to the house and the addition of two feet across the rear of the house. Additionally, a circular driveway was constructed in front of the house. Bayou Homes claimed that the driveway was not covered by the original plans for the house, whereas the Montzes claimed that it was on the original plans and that, therefore, the cost should be included in the contract price.
There were also disputes over a number of other additions and changes to the house. The Montzes claimed that some of these changes were part of the contract and were included in the contract price. They also contended that they were entitled to the unused contract allowances for some of the items on the allowance list attached to the contract and that the unused allowances should be credited against the amounts allegedly owed by the Montzes to Bayou Homes. Finally, the Montzes asserted that certain aspects of the construction did not meet the standards for good workmanship.
|4In response to the suit by Bayou Homes, the Montzes filed a reconventional demand against Bayou Homes and its owner, Emile J. Pellittieri. The reconven-tional demand asserted that a number - of *768 items required to be completed by Bayou Homes under the contract were not and that the Montzes were entitled to damages for the alleged breach of contract by Bayou Homes. Additionally, the Montzes claimed in the reconventional demand that they were owed for unused allowances and for the repair of allegedly substandard construction by Bayou Homes.
After a trial, the trial court judge awarded $15,978.33 plus interest and costs to Bayou Homes. The trial court also awarded expert witness fees in the amount of $850 to Bayou Homes in connection with the testimony of Mr. Reed, the construction engineer who testified at the trial. The Montzes are appealing the award to Bayou Homes, and Bayou Homes has answered the appeal claiming that it is entitled to additional damages and that the trial court judge improperly calculated the damages that were awarded to it.
STANDARD OF REVIEW
In Rosell v. ESCO, 549 So.2d 840 (La.1989), the Louisiana Supreme Court stated that it is well settled that an appellate court may set aside a factual finding of a trial court or a jury only where the finding was based on a “manifest error” or was “clearly wrong”. Id. at 844. Further, where there is conflict in the testimony, a trial court’s or a jury’s reasonable evaluations of credibility and reasonable inference of fact should not be disturbed on appeal, even though the appellate court may feel that its own evaluations and inferences are as reasonable as those of the trial court or jury. Id. Additionally, where there are two permissible views of the 15evidence, the trial court’s or jury’s choice between them cannot be manifestly erroneous or clearly wrong. Id.
If a trial court or a jury has based findings of fact on a determination regarding the credibility of the witnesses, the manifest error or clearly wrong standard of review requires even greater deference to the findings of the trier of fact. Id. This is because only the finder of fact can be aware of the variations in the demeanor and tone of voice of the witnesses that bear so heavily on the listener’s understanding of and belief in what is said. Id.
In LeBlanc v. Stevenson, 00-0157, p. 3 (La.10/17/00), 770 So.2d 766, 770, the Louisiana Supreme Court held that a trial court’s factual finding may not be reversed unless (1) the record reflects that a reasonable factual basis for the findings does not exist, or (2) the record establishes that the findings are clearly wrong or manifestly erroneous. Id. Where a decision of a court is based on an erroneous application of law rather than a valid exercise of discretion, the trial court’s decision is not entitled to deference from the reviewing court. Kem Search, Inc. v. Sheffield, 434 So.2d 1067, 1071-72 (La.1983).
DISCUSSION
The Montzes have raised eight assignments of error. Bayou Homes has answered the appeal contending that the trial court failed to award it all of the damages to which it was entitled.
Assignments of Error
Assignment of Error No. 1: The trial court erred by failing to place the burden of proof on Pellittieri as to the amounts claimed as “extras. ”
In this assignment of error, the Montzes contend that Bayou Homes failed to carry its burden of proof in showing what extra work was done and what the price Lfor the work and materials was. The extras were (1) the construction of a breezeway that connected the house to the garage, (2) two feet added to the rear of the house, (3) two arched windows, recessed lighting cans, and a cathedral ceil *769 ing, and (4) the relocation of an air conditioner from its location in the attic to another part of the attic. The respective costs of these extras were $5,425.00, 2,353.00, $1,270.00, and $2,502.00 for a total amount of $ 11,550.00. The Montzes also argue that $700.00 was charged for the replacement of the air conditioner but that the air conditioner was never replaced.
La. Civil Code art. 2763 sets forth the law regarding the effect of making changes in the original plans for the construction of a building. It states:
When an architect or other workman has undertaken the building of a house by the job, according to a plot agreed on between him and the owner of the ground, he can not claim an increase of the price agreed on, on the plea of the original plot having been changed and extended, unless he can prove that such changes have been made in compliance with the wishes of the owner.
La. Civil Code art. 2764 further provides:
An exception is made to the above provision, in a case where the alteration or increase is so great, that it can not be supposed to have been made without the knowledge of the owner, and also where the alteration or increase was necessary and has not been foreseen.
In the instant case the Montzes are not contending that Bayou Homes did not make the changes included in the extras or that they did not request or approve of them. Instead, they are claiming that Bayou Homes was not entitled to compensation for the work and materials used to construct the extras, because it did not prove the cost of the materials by introducing into evidence invoices that segregated the cost of the materials used to construct the extras from the aggregate 17cost of all the materials used in constructing the Montzes’ home. They are further claiming that some of the extras were not, in fact, extra, because they were contemplated by the original plans.
The Montzes contend that the trial court judge committed legal error by “taking the plaintiffs word.” Because Bayou Homes did not present separate invoices for the materials used in connection with the extras, the Montzes argue that Bayou Homes failed to prove that it was entitled to the cost of the materials used to construct the extras. Bayou Homes, however, asserts that it purchased all of the materials for the construction of the Montzes’ home at one time. Thus, the invoices included not only the materials used for the construction of the house as originally shown on the plans but also the materials used for the extras.
Mr. Pellittieri testified that he used a “material list” to allocate the materials between those that were used for items on the original plans and those that were used to construct the extras. Therefore, the use of the materials could be tracked, and their cost could be allocated on its internal ledger between the construction pursuant to the original plans and the construction of the extras.
In support of their argument that the only way that Bayou Homes could have proven the cost of the materials for the extras was by introducing into evidence separate invoices that segregated the cost of the materials for the original construction from the cost of the materials for the extras, the Montzes cite Roberts v. Rolene Corporation, 415 So.2d 546 (La.App. 1st Cir.1982). In that case, the First Circuit Court of Appeal stated:
Defendant presented invoices attempting to prove its expenses for the extras. However, it was never able to separate the primary costs incurred under its obligation to build the house, pool, etc., from the alleged extras. The invoices *770 merely showed the total amount expended |sfor various items and did not satisfactorily separate the primary work from the extra work.
We find that defendant did not sustain its burden of proving the authorization or expense of the alleged extras....
415 So.2d at 549.
We find that the Roberts case is distinguishable from the instant case, however, because the use of separate invoices is not the only way that the allocation of the cost of materials can be proven. In the instant case, documents were introduced into evidence from which the costs of the materials used for the extras could be calculated, and there was testimony from Mr. Pelletti-eri to explain how the cost of the materials and the labor for the extras was determined. Therefore, the trial court judge was not clearly wrong or manifestly erroneous in finding that Bayou Homes was entitled to recover the amounts awarded for the extras. This assignment of error is without merit.
With respect to the $700 charge in connection with the air conditioner, a stipulation that the Montzes did not owe this amount to Bayou Homes was entered at the trial. Therefore, this issue is moot. Assignment of Error No. 2: The trial judge erred in awarding the contractor $1,106.00 concerning the allowance for bricks.
The contract provided as follows with respect to the bricks:

BRICKS

$6600 not to exceed this amount including sand, mortor [sic] and lentals [sic]. ⅝ Any higher priced bricks will be charged to the purchaser pending approval of contractor ($230. per 1,000)
Mr. Pellittieri testified that the brick “allowance” was not technically an allowance, because the words “not to exceed” meant that no matter what Bayou 19Homes had to pay for the bricks for the house and no matter how many bricks were used, the amount that the Montzes would have to pay for the bricks, mortar, and lentils would be $6,6000.00.[1] This price was, however, based on bricks that cost $230.00 per thousand bricks. Because the bricks selected by the Montzes cost $309.00 per thousand bricks, the Montzes were required under the terms of the contract to pay, in addition to the $6,6000.00, the difference between $309 and $230 for each thousand bricks used in the construction of their house.
The trial judge was not clearly wrong or manifestly erroneous in awarding Bayou Homes the additional amount for the bricks. This assignment of error is without merit.

Assignment of Error No. 3: The trial judge erred in failing to credit the owners for the cost of the concrete for the home’s circular driveway and by referring to Thomas Reed as an expert appointed by both parties to resolve differences and in awarding Mr. Reed expert ivitness fees.

Assignment of Error No. f: The trial judge committed manifest error in failing to award the homeowners reimbursement for the cost of the circular driveway.

We will consider these two assignments of error together, because they both relate to the circular driveway that was constructed in front of the Montzes’ house. The initial issue that must be resolved is whether the trial court judge was clearly wrong or manifestly erroneous in finding *771 that the circular driveway was added to the plans after the contract had been bid and executed.
The Montzes contend that the circular driveway was shown on the original plans and that, therefore, it was not an extra but was, instead, included in the original contract. We have reviewed the original plans and the revised plans and find that the circular driveway was not drawn on the original plans with drafting Imtools. It was drawn freehand. Because the circular driveway was not drawn using drafting tools on the original plans, the trial court judge concluded that the driveway was added to the original plans after they were prepared by the draftsman. Therefore, the judge determined that the circular driveway was not a part of the original plans and was, thus, an extra that was subsequently incorporated into the revised plans.
There was also testimony at the trial from Mr. Pellittieri and Mr. Reed from which the trial court judge could have determined that the circular driveway was an extra, and Mr. Reed’s expert report also supported the trial judge’s finding. Finally, the amount of the allowance for the concrete in the contract supports the conclusion that the circular driveway was an extra. There is no merit to these assignments of error with respect to the finding that the circular driveway was an extra.
With respect to the trial court’s reliance on Mr. Reed’s testimony, the judge, as the trier of fact in this case, had the authority to accept or reject the testimony of any of the witnesses at the trial, whether or not they were expert witnesses. Mr. Reed testified as an expert in construction engineering and as a fact witness regarding the original and the revised plans that he approved. We find no error in the trial court judge’s reliance on Mr. Reed’s testimony.
The Montzes further contend, however, that it was error for the trial court judge to assess the expert witness fees charged by Mr. Reed against them. La. C.C.P. art. 1920 provides that “[ujnless the judgment provides otherwise, costs shall be paid by the party cast [in judgment].” Article 1920 further provides that “[e]x-cept as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable.” Additionally, InLa. R.S. 13:3666(A) provides that a witness called to testify as to an opinion founded on a professional examination and to state the results of the examination “shall receive additional compensation, to be fixed by the court, with reference to the time employed and the degree of learning or skill required.” Further, La. R.S. 13:3666(B) provided that “[t]he court shall determine the amount of the fees of said expert witnesses which are to be taxed as costs to be paid by the party cast in judgment. ...”
Mr. Reed testified regarding the facts in connection with the plans he approved, and he also testified as an expert in construction engineering. His factual testimony, however, does not negate his right to expert witness fees. See Green v. Jefferson Truck Service, 274 So.2d 396 (LaApp. 4th Cir.1973). Thus, we find that the trial court judge did not err in taxing Mr. Reed’s expert witness fees to the Montzes. This aspect of the third and fourth assignments of error is without merit.

Assignment of Error No. 5: The trial court erred in failing to award all amounts proved by the appellants due for Bayou Homes’ failure to complete the job according tó the contract and the plans and specifications.

The trial court judge considered all of the testimony regarding the disputed *772 items for which the Montzes claimed a credit and for which Bayou Homes claimed that it was owed additional amounts by the Montzes. We find that the trial court judge allocated these items in a manner that could be justified by the testimony and the documentary evidence presented at the trial. Therefore, the trial court judge did not commit manifest error, and he was not clearly wrong. Thus, applying the applicable standard of review to the trial court findings, we are required to affirm them. This assignment of error is without merit.
1 Assignment of Error No. 6: The contractor failed to construct the house in accordance with the contract, and the trial judge erred in failing to find the contractor in breach of the contract.[2]
The Montzes stated in their brief that there were a number of items that were not built according to the plans or that were not constructed in a workmanlike manner. The trial court made factual determinations regarding all of the disputed items and regarding whether the home was constructed in a workmanlike manner. There was ample testimony upon which the trial court judge could base his findings regarding the disputed items. Further, not only did Mr. Reed testify that the house was constructed in a workmanlike manner, even the Montzes’ expert witness testified that most of the construction was of a workmanlike quality.
The Montzes, however, testified that there were a number of items that were not of such quality. The testimony, however, demonstrated that much of the construction that was not of workmanlike quality involved those aspects of the construction for which the Montzes’ were responsible. Many of the items about which the Montzes complained were things that should have been done in a workmanlike manner by the painter, and the Montzes assumed responsibility for that aspect of the construction.
The trial court’s findings were based on the testimony and other evidence in this case. There was a reasonable basis upon which these findings were made, and the findings are not clearly wrong or manifestly erroneous. Therefore, this assignment of error is without merit.
1 Assignment of Error No. 7: The trial court erred in failing to award the homeowners the amount due on all allowances specified in the contract.
The Montzes mention in their brief several specific items for which they claim that they should have been credited with unused allowances under the contract. The trial court judge made a factual determination regarding the items for which the Montzes were entitled to a credit. They were entitled to a credit for items that were designated “allowances” if Bayou Homes paid less than the amount of the allowances for the items. Other items were designated as “not to exceed” items or fixed price items. In the case of these items, if the contractor paid more than the fixed amount, the contractor suffered the loss, and if the contractor paid less than the fixed price, the contractor benefited from the savings. In the case of the fixed price items, the Montzes were not entitled to a refund. The trial court judge made a determination based on the testimony and other evidence presented at the trial regarding what credits under the allowances the Montzes should have been given.
We find that based on the record, there was a reasonable basis for the trial court’s *773 determinations and findings of fact. Additionally, the trial court judge acknowledged in his reasons for judgment that any ambiguities in the contract were to be decided in favor of the Montzes, because Bayou Homes had drafted the contract. See La. Civil Code art. 2056, which states that “[a] contract executed in a- standard form of one party must be interpreted, in case of doubt, in favor of the other party.” We find that this assignment of error is without merit.

Assignment of Error No. 8: The trial court erred in taking notice of the contract price of the house representing a cost of less that $60.00 per square foot and in concluding that the contractor anticipated a profit of less than $19,⅛3⅛-00.

|uWe need not determine whether the trial court erred in taking note of the price per square foot and the anticipated profit under the contract, because if the trial court erred, any error in this respect was harmless. This assignment of error is without merit.
Answer to the Appeal
Bayou Homes and Mr. Pellittieri answered the appeal and asserted that the trial court erred in awarding the Montzes a credit in the amount of $700.00 for the gutters that were installed on their house. One of the documents entered into evidence at the trial set forth the material, size, and shape of the gutters and downspouts and indicated that the downspouts would be connected to the “dry-well.” The document also contained the distance that was to be allocated between downspouts. In the same section of the document that described the gutters and downspouts, the following notation appeared: “N/A per plans.” The Montzes contended at the trial that the cost of the gutters and downspouts was included in the contract price. Therefore, the Montzes argued that because Bayou Homes did not install the gutters and downspouts, they are entitled to a credit for , $700.00, the amount they paid for the installation of the gutters and downspouts. Bayou Homes and Mr. Pel-littieri argued that the notation “N/A per plans” meant that gutters and downspouts were not included in the contract price for building the house.
A trier of fact might find that the detailed information regarding the gutters and downspouts was included to designate the specifications for the gutters and downspouts should the Montzes decide to add them to the house even though the contract did not include those items. Alternatively, the designation of the specifications could be construed to mean that the gutters and downspouts were included in the contract price. Thus, there is at least some ambiguity in the 11fimeaning of the provision relating to gutters and downspouts. Therefore, the trial court judge construed the provision against Bayou Homes in accordance with La. Civil Code art. 2056, cited above.
We do not find that the trial court’s decision to credit the Montzes with $700.00 as reimbursement for the cost of the gutters and downspouts that they installed was error. The contractual provision regarding the gutters was ambiguous. Thus, the trial court construed it in favor of the Montzes, because the contract was executed using a standard form of contract. The trail court’s award of $700.00 for the price of the gutters and downspouts was correct.
CONCLUSION
We find no error in the trial court judgment. Therefore, the judgment of the trial court is hereby affirmed.
AFFIRMED.

. In fact, Mr. Pellittieri testified that Bayou Homes paid approximately $7,000 for the bricks, sand, and mortar.

. Although this assignment of error raises the legal issue of breach of contract, the issue of breach of contract was not briefed by the Montzes. Therefore, we will address the claims that were addressed in connection with this assignment of error.